UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

- against -

LEONARDO HANSON, a/k/a Dillon Bussell,

Defendant.
------------------------------------------------------------------X

MEMORANDUM AND ORDER ADOPTING REPORT AND RECOMMENDATION
15-CR-437 (RRM) (RML)

ROSLYNN R. MAUSKOPF, United States District Judge.

**INTRODUCTION**

Defendant Leonardo Hanson, a/k/a Dillon Bussell, is charged by indictment with illegal reentry pursuant to 8 U.S.C. §§ 1326(a) and (b)(2). He moves to dismiss the indictment pursuant to, *inter alia*, 8 U.S.C. § 1326(d), claiming that his removal from the United States pursuant to a removal order issued by an Immigration Judge (the "IJ") on March 22, 2012 was fundamentally unfair.

The Court referred Hanson's motion to Magistrate Judge Robert M. Levy for a Report and Recommendation ("R&R"). Following full briefing, oral argument, post-argument supplemental briefing, and additional oral argument, Magistrate Judge Levy issued his R&R, recommending that Hanson's motion be denied. Hanson filed timely objections, and the government responded thereto.

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim P. 59(b)(3); 28 U.S.C. § 636(b)(1). The district judge "shall make a *de novo* determination of those portions of the Report and Recommendation to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn*, 474 U.S. 140, 149-50 (1985); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d

Cir. 1997). Upon *de novo* review of the R&R here, including the report, the record, applicable legal authorities, and all objections and replies, the Court adopts the Magistrate Judge's thorough and well-reasoned R&R in its entirety, and denies Hanson's motion to dismiss the indictment.

**DISCUSSION**

The Court assumes familiarity with the facts, procedural history, and background of this matter as set forth in the R&R, none of which is in dispute. Put briefly, Hanson seeks to collaterally challenge the validity of the removal order upon which the current charge of illegal reentry is predicated. "The alien bears the burden of showing that entry of the removal order was fundamentally unfair." *United States v. Daley*, 702 F.3d 96, 100 (2d Cir. 2012); *see also* 8 U.S.C. § 1326(d)(3). Hanson makes two assertions in support of the claim that his removal order was fundamentally unfair: first, the IJ did not inform Hanson that he was eligible for voluntary departure, and second, the IJ did not ensure that Hanson's waiver of his right to representation at his own expense was knowing and voluntary.

The Magistrate Judge correctly concluded that Hanson was not eligible for voluntary departure pursuant to 8 U.S.C. § 1229c(a) because Hanson was previously convicted of an "aggravated felony" – the crime of Robbery in the Third Degree under New York Penal Law § 160.05. Thus, the Magistrate Judge properly concluded that the failure to advise Hanson regarding this form of discretionary relief was not error, prejudicial, or fundamentally unfair. *United States v. Copeland*, 376 F.3d 61, 70 (2d Cir. 2004) ("To show fundamental unfairness under § 1326(d)(3), a defendant must show both a fundamental procedural error and prejudice resulting from that error.") (internal citation and quotation marks omitted).

With regard to Hanson's waiver of his right to representation at his own expense, the Magistrate Judge reviewed the proceedings before the IJ and correctly found that the IJ gave

Hanson ample time and guidance with regard to his rights, and fully complied with the requisites of the Due Process Clause, the immigration statutes, and the relevant regulations in effect at the time. In that way, the Magistrate Judge ensured that Hanson knowingly and intelligently waived his right to counsel. *See* 8 C.F.R. § 1240.10(a) (2012); *Picca v. Mukasey*, 512 F.3d 75, 78 (2d Cir. 2008) (holding that failure to follow established procedures can constitute reversible error without any showing of prejudice, as "the right to counsel concerns fundamental notions of fair play underlying the concept of due process . . . .") (internal citation and quotation marks omitted).

Hanson advances objections to the Magistrate Judge's conclusions on both prongs of his motion. They are, in essence, a "second bite at the apple," as they merely recite the same arguments made before the Magistrate Judge, and they contain no case law. While such objections are typically subject to clear error review, the Court has conducted a full *de novo* review of Hanson's objections, and finds them to be without merit for the same reasons advanced by the Magistrate Judge.

Voluntary Departure

Hanson asserts in his objections, as he did before the Magistrate Judge, that his two prior convictions for Robbery in the Third Degree under New York law do not constitute "aggravated felonies" either as "theft offenses" under 8 U.S.C. § 1101(a)(43)(G) or as "crimes of violence" under 8 U.S.C. § 1101(a)(43)(F). On that basis, Hanson argues that he is eligible for voluntary departure at the time of his removal from the United States and that the IJ was obligated to advise him of that eligibility. The Magistrate Judge did not reach the issue of whether the crime constitutes a crime of violence, as he found that it constitutes a theft offense. In his objections, Hanson continues to complain that "the R&R does not address all of the issues raised by Mr.

Hanson" including "Mr. Hanson's crime of violence arguments." (Hanson Obj. (Doc. No. 43) at 1.) That Hanson presses this argument "ignores the fact that conviction of a 'theft offense' . . . is an independent basis for removal under section 1101(a)(43)(g) irrespective of whether the offense was also a 'crime of violence' under section 1101(a)(43)(F)." *Hatkewicz v. AG of the United States*, 350 Fed. Appx. 667, 671 (3d Cir. 2009).

The parties agree on the generic definition of a theft offense within the meaning of § 101(a)(43)(G) as set forth by the BIA: "the taking of, or exercise of control over, property without consent whenever there is criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *Matter of Ligurian de Fatima Garcia-Madruga*, 24 I&N Dec. 436 (BIA 2008). The BIA has further explained that "the taking of property *without consent* is required for a § 1101(a)(43)(G) 'theft offense,'" in contrast to an "offense that involves 'fraud or deceit'" under § 1101(a)(43)(M), which "ordinarily involves the taking or acquisition of property with consent that has been fraudulently obtained." *Id.* at 440 (emphasis in original).

Hanson argues in his objections, as he did before the Magistrate Judge, that because robbery by definition must be committed "in the course of committing a larceny," and because a larceny encompasses fraudulent consensual takings, third degree robbery cannot be a theft offense. But as the Magistrate Judge correctly noted, "defendant fails to take into account the way in which robbery is distinguishable from larceny: it requires the use or a threat to use physical force. Without resorting to an exercise in creative legal imaginations the use or threat of physical force is incongruous with a consensual taking." (R&R (Doc. No. 42) at 9.) Thus, it is no surprise that the Second Circuit has consistently held that the varying degrees of robbery under New York law are theft offenses within the meaning of 8 U.S.C. § 1101(a)(43)(G). *See*

*Brown v. Ashcroft*, 360 F.3d 346, 354 (2d Cir. 2004) ("The amended definition of aggravated felony, which includes theft offenses accompanied by a term of imprisonment of at least one year, 8 U.S.C. § 1101(a)(43)(G), and attempt to commit such an offense, *id.* § 1101(a)(43)(U), therefore encompasses [petitioner's] 1994 convictions [for attempted second-degree robbery].") (italics added); *Perez v. Greiner*, 296 F.3d 123, 126 n.5 (2d Cir. 2002) ("Robbery in the second degree is an 'aggravated felony,' 8 U.S.C. § 1101(a)(43)(G) . . . ."); *United States v. Fernandez-Antonio*, 278 F.3d 150, 160 (2d Cir. 2002) (finding that defendant "pleaded guilty to attempted robbery in the third degree, a crime that meets the definition of 'aggravated felony' under 8 U.S.C. § 1101(a)(43)(G)"); *see also Brown v. Mazzuca*, No. 03 CV 666, 2004 WL 1753314, at *5 (E.D.N.Y. Aug. 5, 2004) (finding that petitioner "was convicted of robbery in the first degree, an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G)") (internal footnote omitted).

Hanson again objects to reliance on these cases, as he did before the Magistrate Judge, claiming that they "do not relate specifically to robbery in the third degree." (Hanson Obj. at 2.) He continues, "[t]here are no 'aggravating factors' in the robbery in the third degree statute, which effectively guts the government's argument that non-robbery in the third degree cases are on point." (*Id.*) These assertions miss the mark. The "core requirement for all three degrees of robbery under the Penal Law is proof that the defendant forcibly stole property from another." *People v. Lopez*, 535 N.E. 2d 1328, 1330 (N.Y. 1989). Thus, the gradation of robbery merely reflects the presence of aggravating factors. *See People v. Miller*, 661 N.E.2d 1358, 1360-61 (N.Y. 1995) (finding that distinctions among degrees of robbery reflect specified aggravating factors).

Hanson also asserts, as he did before the Magistrate Judge, that "[t]here are countless ways that a consensual taking can occur under the robbery in the third degree statute, and it does

not take any creative imagination to see that a mere threat to use a modicum of physical force, such as lightly touching a shoulder or forearm, would not be 'incongruous with a consensual taking,' or to avoid the double negative, how a threat or use of nominal non-injurious physical force can be compatible with a consensual taking." (Hanson Obj. at 2.) This argument fails, as well. Hanson has not proffered any case law that demonstrates that his hypothetical factual scenarios give rise to a robbery offense. *Moncrieffe v. Holder*, 133 S.Ct 1678, 1684 (2013) ("Our focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.").

Simply put, Hanson raises in his objections on the same arguments that were rejected by the Magistrate Judge. Applying *de novo* review to the R&R and considering those objections, the Court adopts in full the reasoning and conclusions of Magistrate Judge Levy and finds that due to his third degree robbery convictions, Hanson was statutorily ineligible for voluntary departure, and as a result, no fundamental unfairness resulted from the IJ's failure to inform Hanson about this discretionary form of relief. As such, the Court denies this prong of Hanson's motion.

<u>Waiver of Right to Counsel</u>

In his objections, Hanson continues to press the argument that the removal order was fundamentally unfair because the IJ failed to engage in a colloquy sufficient to ensure that Hanson's waiver of his right to counsel was knowing and voluntary. He claims that "[t]he IJ did not do the bare minimum to make sure that Mr. Hanson understood his right to counsel and voluntarily waived it, particularly during [Hanson's] second appearance in which the final

removal order was issued." (Hanson Obj. at 2.) Hanson also claims: "In that appearance, the IJ literally asked 'You need more time for an attorney?' and then 'You want to be deported?'" (*Id.*) Hanson's argument fails to acknowledge the full colloquy held over two appearances before the IJ, which, as the Magistrate Judge correctly found, fully complied with the Due Process Clause and all of the regulations in effect at the time of the hearing. As the Magistrate Judge found, Hanson was advised of his right to counsel, and he confirmed that he understood his right and that he had received a list of free attorneys. (R&R at 12.) The IJ "strongly encouraged" Hanson to contact his family to help him obtain an attorney and adjourned the hearing to give Hanson time to so do. (*Id.*) At the continued hearing, the IJ asked Hanson at the outset whether he needed more time to look for an attorney, to which Hanson replied that he did not because he "came to the decision that [he] want[ed] to go back to [his] country." (*Id.*) On this record, the Magistrate Judge properly concluded that Hanson's waiver of his right to counsel was knowing and voluntary. This Court reaches the same conclusion.[1]

[1] Hanson now acknowledges that the IJ's failure to engage in the colloquy suggested in the Immigration Judge's Benchbook is not a *per se* violation of his due process rights. (Hanson Obj. at 2.) However, he claims that this failure is "highly informative and illustrative of how the IJ failed to safeguard the constitutional rights of an unrepresented minor who faced being separated from his mother and family for the rest of his life." (*Id.* at 2-3.) Hanson does not specify how any differences between the inquiry of the IJ and that suggested in the Benchbook may have undermined Hanson's rights. Nor has Hanson proffered any case law – either in his objections or in his briefing before the Magistrate Judge – that requires an IJ to follow the Benchbook script.

## CONCLUSION

For the foregoing reasons, upon *de novo* review, the Court overrules Hanson's objections to Magistrate Judge Levy's R&R, adopts in full the reasoning and conclusions in the R&R, and denies Hanson's motion to dismiss the indictment.

SO ORDERED.

Dated: Brooklyn, New York
February 21, 2017

s/Roslynn R. Mauskopf

ROSLYNN R. MAUSKOPF
United States District Judge